UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWER BUSINESS TECHNOLOGY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WiZiX TECHNOLOGY GROUP, INC.; GARY JOHNSON; TYLER JOHNSON; BRAD FARNUM; JOSEPH POWER; and DOE Defendants 1 through 20, inclusive,<br><br>Defendants. | No. 2:23-cv-00518 AC<br><br>ORDER |

This case is before the undersigned for all purposes on the consent of the parties. ECF No. 37. Before the court is defendants' motion to dismiss and to strike. ECF No. 24. Plaintiff filed two oppositions, separately addressing each portion of defendants' motion. ECF Nos. 26 (opposing motion to dismiss), 27 (opposing motion to strike). Defendants submitted a reply. ECF No. 29. For the reasons set forth below, the motions are DENIED and the parties are ordered to contact the court to set a date for an Initial Scheduling Conference.

## I. Background

### A. The Complaint

The operative First Amended Complaint ("FAC") asserts federal jurisdiction pursuant to 28 U.S.C. § 1331 because it contains a claim brought under the Lanham Act, 41 U.S.C. § 1125,

1

along with state claims for which plaintiff seeks supplemental jurisdiction. ECF No. 17 at 3. Plaintiff Power Business Technology ("PBT") alleges that it and defendant WiZiX Technology Group ("WiZiX") are both regional independent office equipment dealerships operating in northern and central California, and interstate. Id. According to the FAC, the principals of each company, Ed Roe (PBT) and Gary Johnson (WiZiX), have known each other since 2004 and worked together at an old regional office equipment dealer called Zoom Imaging Solutions ("Zoom"). Id. Zoom became a licensed dealer of Toshiba manufactured office equipment products in the 2000's but in 2012 was purchased by Xerox, a Toshiba competitor. Id. Plaintiff alleges Xerox's acquisition of Zoom was part of an overall competitive business strategy by which Xerox tried to limit or eliminate Toshiba's sales. Id. at 4.

Following the acquisition of Zoom by Xerox, Johnson retained his contacts at Toshiba and served as Zoom's President, with the understanding that Zoom would eventually not continue to deal in Toshiba-manufactured products as it had, if at all. Id. Johnson resigned from Zoom in 2016. At the time, Zoom was owned by Xerox but still supplying Toshiba products and services to regional businesses. Id. In or after December 2016, plaintiff alleges that Johnson began speaking with Toshiba about opening a new authorized Toshiba dealership in the region as Zoom's competitor, stating that he intended to build a new company called WiZiX to handle Toshiba sales in the present, and ultimately to handle 100% of Toshiba sales once Zoom stopped dealing in Toshiba products. Id. In 2017, Johnson opened WiZiX and acquired a Toshiba dealer agreement for WiZiX. In the wake of Johnson's resignation, Roe became the new president of Zoom. Id.

Plaintiff alleges that weeks after making Roe the president of Zoom, Xerox indicated that it believed Johnson had committed misconduct while at Zoom and directed Roe, in Zoom's name, to oversee a Xerox-initiated lawsuit against Johnson and WiZiX for misappropriation and misuse of Zoom (Xerox) trade secrets and confidential business information, in addition to claims for unlawful interference with Zoom (Xerox) customer contracts and prospective business relationships. Id. at 4-5. In 2018, Johnson and WiZiX obtained a dismissal with prejudice of that litigation. Id. at 5. In February of 2019, Zoom announced to its employees that it was closing,

1   and Roe was told that he would be fired in the upcoming days or weeks but was asked to assist
2   with the closure of Zoom.  Id.

3   Plaintiff alleges that Johnson planted a "mole" within Zoom during this period to track
4   what was happening with Zoom internally, and what was happening with Zoom's personnel and
5   remaining Toshiba product sale and maintenance efforts.  Id.  On March 6, 2019, Johnson wrote a
6   letter to Toshiba expressing that he was upset to learn that Toshiba was having discussions with
7   Roe about potentially authorizing him as a dealer in Northern California in some of the markets
8   WiZiX was in.  Johnson followed up with two more letters to Toshiba.  Plaintiff alleges that
9   Johnson then, "[f]eeling ignored by Toshiba . . . developed a robustly un-American and anti-
10  competitive two-part plan to knock down newly-developed PBT out of the market."  Id. at 6.

11  First, plaintiff alleges Johnson provided false material to Xerox, encouraging it to sue Roe
12  and PBT so that the newly formed company would have to spend "a shitload of money on
13  attorneys."  Id.  Xerox did sue Row and PBT, and the lawsuit was dismissed with prejudice in
14  2022.  Id. at 8.  Second, plaintiff alleges "WiZiX Executives, orally and in writing, instructed
15  WiZiX salespeople to contact PBT potential and certain actual Toshiba customers in the region
16  ("customers"), both verbally (in person and over the phone) and in writing (via emails and text
17  messages), and tell them that all of the things being said by Zoom (Xerox) in the PBT litigation
18  were not only in fact true, but that PBT should not be engaged as a vendor because it was (a)
19  going out of business and (b) that PBT employees went beyond was expressed in the Zoom
20  (Xerox) Complaint by stealing the customers' personal bank account information to develop
21  business and earn money."  Id.  PBT alleges it continued to lose customers to WiZiX because of
22  defendants' anti-competitive and unlawful marketing campaign.  Id. at 12.  Plaintiff alleges that
23  defendants violated the Lanham Act's prohibition on false advertising.  Id. at 13.

24      B.  Motion to Dismiss and to Strike

25  Defendants move to dismiss this case, arguing that plaintiff fails to state a claim under the
26  Lanham Act, the only cause of action supporting federal jurisdiction.  ECF No. 24.  Defendants
27  also move to strike paragraphs 42 through 52 of the FAC pursuant to Fed. R. Civ. P. 12(f).
28  ////

## II.  Analysis

### A.  Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

To survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

////

B. <u>Motion to Dismiss False Advertising Under the Lanham Act</u>

There are five elements to a false advertising claim under 15 U.S.C. § 1125 of the Lanham Act: "(1) a false statement of fact by the defendant in a commercial advertisement or promotion about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997). Defendants argue that plaintiff's claim fails on the first element because the FAC, which identifies ten allegedly false or misleading emails, does not establish "commercial advertising or promotion."

The Ninth Circuit has set forth a four-part test for determining whether communications can be considered "commercial advertising or promotion" under the Lanham Act. For representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." <u>Coastal Abstract Service, Inc. v. First American Title Ins. Co.,</u> 173 F. 3d 725, 735 (9th Cir. 1999) (internal citation omitted).

Defendants asserts that the FAC does not establish, and plaintiff cannot establish, the last element of this test because there are 10 specific emails referenced in the FAC, and only 10 emails disseminated into a vast market cannot constitute "advertising" or "promotion" within the context of the Lanham Act. ECF No. 24-1 at 10. Plaintiff counters that defendants ignore and contradict the FAC in their briefing, noting that the FAC alleges "a verbal component of their hidden false ad campaign in a specified market pled (and the showing that 10 illegal emails are

mere exemplars of the "widespread" campaign pled)." ECF No. 26 at 9.  The court agrees with plaintiff.  At this stage of the litigation, the court must take the facts alleged in the complaint as true, and the FAC clearly alleges a broader campaign than defendants describe in their motion.  The allegations, as they are written, are sufficient to state a claim for 12(b)(6) purposes.  Discovery has not commenced in this case, and the court declines to prematurely draw conclusions about the *actual* scope of defendants' communications or the *actual* size of the market.  The FAC pled at the outset a limited market and widespread dissemination of false ads within it (FAC, ¶¶ 23, 54, 57-59); whether these allegations can ultimately be proven true or not is irrelevant to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The court finds the claim adequately pled.

C.  Motion to Strike

Defendants seek to strike paragraphs 42 through 52 of the FAC because they "are expressly excluded from each of PBT's causes of action," are scandalous and irrelevant, and, if allowed to remain in the case, would subject plaintiffs to an anti-SLAPP motion under California law.  ECF No. 24-1 at 13.  A motion to strike may be brought to strike any "redundant, immaterial, impertinent, or scandalous matter" contained in a filing pursuant to Federal Rule of Civil Procedure, Rule 12(f).  "'[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" United States v. Wang, 404 F.Supp.2d 1155, 1157 (N.D. Cal. 2005) (citing Colaprico v. Sun Microsystems, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991)).

Here, paragraphs 42-52 of the FAC detail allegations regarding Johnson's comments to Xerox, leading Xerox to sue PBT and costing "PBT no less than $1.7 million to defend."  ECF No. 17 at 8-9.  It is not clear to the court that these paragraphs have "no possible bearing on the subject matter of the litigation" because they are part of the overall fact pattern detailing the long relationship between the plaintiff and defendants, and the allegations may bear on the claims.  These paragraphs are not clearly unrelated or irrelevant to the causes of action.  Defendants do not make an anti-SLAPP motion here, and the court declines to address that issue.  The standard

////

to strike portions of a pleading under Fed. R. Civ. P. 12(f), however, is not satisfied and the motion will therefore be denied.

### III.  Conclusion

The motion to dismiss and motion to strike (ECF No. 24) is DENIED.  The parties are ORDERED, within 30 days of this order, to contact Courtroom Deputy Jonathan Anderson by phone (916) 930-4199 or by email at janderson@caed.uscourts.gov to set a date for an Initial Scheduling Conference.

DATED: June 26, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE